All rise. The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning and welcome to the Nakamura Courthouse here in Seattle, Washington. We are sitting en banc to hear the matter of Andrew Teter and James Grell v. Anne E. Lopez and Daryl Ng. If the counsel are ready to proceed, you may come forward. And before we begin, I just want to check with Judge Lee, who is sitting via video. Can you hear us, Judge Lee? Yes, I can. Thank you. All right. Thank you. Please come forward. Good morning, Your Honors. May it please the Court. My name is Alan Beck on behalf of the Plaintiff Appellants. I'll endeavor to reserve 10 minutes for rebuttal. Hawaii law remains an unconstitutional infringement on my client's Second Amendment rights. That is because it operates as a de facto ban on the carry of butterfly knives. Hawaii law prohibits the carrying on the person or a bag or other container carried by the person of any butterfly knife. That means there is no meaningful way to carry a butterfly knife for purposes of lawful self-defense. For that reason, this case is not moot. And in Brune, the Supreme Court found that arms, which are commonly owned, there must be a right to carry them for purposes of lawful self-defense. Well, even if the case is not moot, why doesn't the disposition that the Supreme Court did in the New York State Rifle and Pistol Association apply here, that the change in the law has so reconfigured the case that it needs to be sent back for further development, maybe amendment of the pleadings, but it's not in a posture where it can be resolved given the reconfiguration. What's your response to that case? Yes, Your Honor. In that case, that case was completely moot. All the Supreme Court did was remand back to the trial court to see whether there could be an amendment of the complaint to, either for nominal damages or otherwise, keep the case alive. And that case ultimately dismissed because there was no mechanism to do so. And here, remand simply is not proper. Counsel, can I ask you, didn't you, in the district court, explicitly represent that through the instant suit, plaintiffs were challenging Hawaii's restriction on open carry? No, Your Honor. We asked to either to possess and carry butterfly knives in the trial court. And the district court opinion interpreted our challenge as an open carry restriction because at the time, Peruta was on the books. The Levin, Judge, and Bonk opinion, which found that concealed carry was simply completely outside of the scope of the Second Amendment right. So all that remained was the open carry component. I thought that you had an exchange with the district court during the motion for summary judgment hearing regarding the scope of the suit. And it seemed like you attempted to distinguish the historical laws because they dealt with the concealed carry of bowing knives and other weapons and not bans on possession. And so it just seemed to me that this was the first time that you were seeking to change course and argue that the plaintiffs have in fact been seeking to enforce a concealed carry. So I was confused by that. Yes, Your Honor. We are seeking to carry. And here, this case is distinguishable on several grounds from those historical laws. While I don't think this court needs to go as far as to look to whether this is solely a concealed carry ban, because first, it's not just concealed carry. You can't carry in a bag or other container in addition to be concealed carry. We need to interpret. We have to give meaning to every single word within a statute. So, Mr. Beckett, is it your position then that if the weapon, the arm is small enough, a concealed carry ban is effectively a ban of all kinds just because of the nature of the weapon itself? Well, let me ask you this, because I have seen knives that are in holsters alongside of a belt, you know, openly seen by the public. Why couldn't a butterfly knife be placed in that way and not run afoul of the statutory change? Well, because that would be a container, Your Honor. And it's illegal to carry inside of a container. And again, we have to. You're saying a holster is a container? They didn't define it within the legislative text. So we have to. The Supreme Court has defined a container in New York v. Belton as any object capable of holding another object. So as far as we can tell. There's a knife in a sheath, like a Bowie knife alongside someone's belt. Is a sheath a container since the knife can't be carried without something? And that's the problem with the statute. Even if it was just concealed? The statute also requires it be concealed and in a container. And if it's in a sheath and it's partly visible, is it concealed then? Your Honor, it does not say that. It says carries concealed on the person or in a bag or container, Your Honor. And so as we interpret this statute, if it was simply in a mesh bag that was visible, it would still run afoul of the statute. Because it doesn't need to be concealed in order to run afoul of the statute. As far as I can tell, the only way to actually carry under the statute is essentially to carry it in your hand or some other extremely impractical manner. However, here, even if the... Guns carried in a holster and holsters, isn't that the equivalent of a sheath for a knife? Yes, exactly. And this statute, under Hawaii law, if you're open carrying, I distinguish this from the concealed carry portion of this. You can openly carry a firearm in a holster and it doesn't run afoul of Hawaii's concealed carry laws. I want to go back to the language of the statute. It says any person not authorized by law who knowingly carries concealed on the person or in a bag carries concealed in a bag. I don't see it skipping over the word concealed in the second clause. The way that we've read this is that it's or. It's or, but it's or between two prepositional phrases. On the person, in a bag, and both of them follow carries concealed. So it has to be both concealed and in a container. If this court decides to adopt that reading of the statute, the statute is still unconstitutional. The reason for that is there is no historical tradition of carry, of prohibiting the concealed carry of pocket knives. Counsel, if I can have you circle back to Judge Collins' original question up here. I know that's a lot of faces to search out. Thank you, Judge. Go back to Judge Collins' earlier question about the adequacy of the record in this case. One of the arguments that you raised in your briefs is that most knives can be openly carried because there's a clip that you can clip to the pocket. And your argument is that these butterfly knives can't be carried in a similar manner. What in the record tells us that? Shouldn't we remand this case, assuming that it's not moved? Shouldn't we remand this case to give the state an opportunity to demonstrate that these knives can be openly carried in the same way as all other knives that you're talking about in your argument? No, Your Honor, for a couple reasons. One, this was an affirmative choice that the State of Hawaii made to repeal the last iteration of the butterfly knife ban. And it would have set a horrible precedent to allow a state to attempt to moot its own case after losing in front of a three-judge panel and then seeking— No, my question is, assuming it's not moot, there's a question as to whether the record is adequate. Your argument that you made is that most knives can be openly carried but that these particular knives can't, just because their configuration is such that they can't be openly carried in the same way as other knives. So my question to you is, why shouldn't we remand for further development of the factual record to give the state an opportunity to demonstrate whether these knives can be carried in the same way as other knives that you're talking about? I'm not familiar with openly carrying knives, so whatever it is that you're saying in your briefing can be openly carried, I don't know whether these knives can be clipped to pockets in the same way as other knives. And why shouldn't the state have an opportunity to develop that record? For a couple reasons, Your Honor. First, I don't believe that issue is dispositive of the case. They can be decided simply because this is a concealed carry ban, and there's no historical tradition on prohibiting the concealed carry of pocket knives rather than bowie knives, handguns, et cetera. Furthermore, we produced an expert, and the state produced an expert. We filed an expert report. They had an opportunity to rebut the contentions inside that expert report, and they decided not to. They also affirmatively decided not to depose our expert, whereas we made the decision to depose their expert, Lieutenant Robin Nakamini, and they've just simply waived their opportunity to make the – Can I ask a follow-up to that question? What if we disagree with you and we end up sending it back for factual development on some of these questions and let the district court address that in the first instance? It's kind of a weird case in that you won before the panel on the previous ban. So I'm trying to figure out what we should do with regard to that if we send it back to the district court. As you know, the three-judge panel's decision was ministerially vacated when we granted en banc, our order doing that ministerially vacated the order. If it hadn't been ministerially vacated, then that decision would be still on the books, and we would have to decide what to do about that. And I'm trying to figure out should we vacate our vacature, should we reinstate the three-judge panel and send it back down, which would obviously prevent Hawaii from passing the law that they have now taken. In other words, it's sort of an odd, like, mirror-image Munsingware issue here that's complicated by the fact that we ministerially vacated, which I can't actually find a rule that says we should ministerially vacate, so I'm not sure why we did or what our authority for doing that was. So I'm trying to figure out should we – what is your position? Should we bring the three-judge panel back if we send it – decision back, if we send it back down? Yes, Your Honor. That's exactly what this court should do. This court made the decision to try to vacate that predicated upon the opportunity here, this issue en banc. Now that opportunity, if this court decides remand, then at a bare minimum what this court should do is decide to – is to remove the vacature. Well, do we have to distinguish between the two issues the panel decided? One is the threshold question, whether these knives are eligible for any Second Amendment protection, and then the second was whether a total ban is consistent with the Second Amendment. The second issue seems moot. Maybe we can't do anything with that, but the first issue seems very much live since there's no reason to remand on a carry issue unless we resolve the threshold issue of whether these knives are eligible for protection and who has the burden of that, which is what we granted en banc. Yes, Your Honor. I mean, that's what I think. If this case decides to retain jurisdiction, not give it back to the three-judge panel, then it should at bare minimum decide what the threshold question of whether butterfly knives are an arm, or it could just simply remand back to the three-judge panel. Can you address that burden issue, which was the main issue that we had granted rehearing on? Who has the burden to show the exception for dangerous and unusual? Yes, Your Honor. In Heller, the Supreme Court said that the Second Amendment applies prima facie to all bearable arms. The State has conceded that the butterfly knife is a bearable arm. Therefore, they had an affirmative duty to demonstrate that these are somehow devoid of Second Amendment protection. In Baroon and most recently in Rahimi, the Supreme Court has reiterated that it's a presumptive protection to a Second Amendment protection to all bearable arms. That means that the State has an affirmative duty to find that the Second Amendment does not protect an arm. In the past four and a half years of litigation, the State of Hawaii has never attempted to do that. Can I ask, why do you think it's appropriate for us to reach that question? If the case that you brought is moot, the fact that you might be able to bring a different case to this new and different law doesn't seem like a reason for us to preemptively opine on what legal standards will govern the new case that you might bring. Why should we say any of that if we think that your case is actually moot? I don't see how this case is moot. There's a difference. I want to distinguish between merits and mootness. This Court and the Supreme Court, Knox v. SEIU, has said a case becomes moot only when it is impossible for a court to grant any effectual relief whatsoever to the prevailing party. Now, we have a challenge. Counsel, on the mootness question, the District Court had characterized your challenge as a challenge to open carry. Did you ever correct that or take a stand and challenge that characterization in any way? I don't see it in the record. And if you haven't, then why isn't that argument forfeited? Your Honor, again, it was an interpretation. At the time that the trial court opinion happened, the pruda was on the books. So that's simply the trial court's interpretation of what's left. But didn't you say yes? The district judge asked you, your claim is that you can't possess or openly carry a butterfly knife. And the record indicates the counsel said yes. There was no pushback or no, we're also allegedly, our rights are infringed because we can't have a concealed carry of one of these knives. So that, to Judge Wynn's point, seems as if you've agreed that the case was about open carry and possession. And now that the statute has changed, I don't fault you for this because the statute changed. So now we're dealing with something entirely different. But I didn't see any argument that a concealed carry would violate the Second Amendment. Our briefing within the trial court simply was on carry itself because Right, so you just said carry. You didn't specify open or concealed. But when the district judge said open carry, counsel said yes and agreed that was the claim. And the declarations to show injury were about possession. And that's no longer an issue. So I see it as a mootness problem and possibly a standing problem. Yes, your Honor. Again, we were addressing that under the legal landscape that occurred while we were litigating that case. We weren't forfeiting or waiving any sort of claim. That's fair. But a lot of things have happened since you started litigating this case, which is why we're now in a completely different posture. So Bruin was decided and then the Hawaii statute was amended and now Rahimi's been decided. So why doesn't that suggest that this should be sent back to the district court for the parties to develop the record and make arguments based on the statute that's on the books now? Because, again, not to blabber this point, but, you know, they've made a affirmative. They made a decision that they were going to remand. Sorry, not remand. That they were going to get rid of their own statute. And, first, they shouldn't be rewarded for attempting to rob this court of appellate authority. Is it your suggestion that the amendment to the statute was enacted as part of an effort to manipulate the court's jurisdiction? Yes, your Honor. And what evidence of that do you have? Or is it just a coincidence in timing? I mean, that's not part of the record, but I have spoken to several people. I'm pretty active in dealing with the Hawaii legislatures, and a lot of my clients are. And, yeah, they told me that this was done in response to the litigation. You're familiar with our decision in Board of Trustees versus Chambers, an en banc opinion from roughly 2020, where we clarified when a change in legislation moots a case, right? And there has to be some reason for us to believe in the record that this was nefarious or in some attempt to manipulate jurisdiction so that, in fact, after the case is mooted, Hawaii would turn around and reenact the prior statute. I mean, is there any suggestion that that's what they're going to do? I'm fairly confident that what this ‑‑ I will look through the legislative history. There's been a couple of state legislatures that have spoken candidly to people in general about that this was done in response to ‑‑ You have to point to something in the record, counsel. Is there anything in the record? Not in the record, but after this hearing, I'll endeavor, 28J, something to supplement the record. But also, I mean, if it's in response to the decision, right, if state legislators pay attention to developments in the law and try to enact statutes that will survive constitutional challenge rather than be unconstitutional, that's a good thing, right? I mean, that's not behavior that we should try to discourage. I mean, the concern with manipulation is, you know, they moot the case, then once the case goes away, they come back and pass the same law again, and then it can stay on the books for another few years while you try to challenge it. That's the manipulation threat, and it doesn't sound like you're suggesting that that's what anybody is planning. At least in the states in bunk, I think the real concern is they don't want to be able to, they're attempting to rob this court, this jurisdiction, to be able to size live case controversies. It was done because there was already a three-judge panel opinion. It would be one thing if they had done this prior to the three-judge panel opinion, but this was a clear attempt to try and vacate that negative precedent. But I thought they did it after the en banc had already been granted, didn't they? So the three-judge panel had already been vacated by the time the change came. Yeah, I believe the law was being written immediately after. You may be correct on the date of passage. It was passed, but your point is the process started. Yeah, so part of this colloquy, it seems like the concern that we've, that the Supreme Court and our court has expressed in the Munsingware context is you win in a court below, you appeal, you do something to moot, and you try to lock in your win, right? And so if they haven't locked in a win, if the same party that mooted the case is the one that won below, then we normally Munsingware vacature. That's how Munsingware typically works. So here what happened is they won en banc review and secured vacature of the three-judge panel opinion that they had lost. So they got that win just through our ministerial vacature. They got that win. And now they're trying to lock that in by mooting. That's the concern, not that they'll necessarily reenact. And that's a structural concern, it seems to me. That's correct, Your Honor. And in Munsingware, we don't care whether there's evidence in the record of why they did what they did. We just care whether or not it creates the incentive to actually moot out a case and lock in a win that you got below. Yes, that's absolutely right. We haven't ever required that there actually be some incentive, like nefarious comments that we're trying to finish. It's just kind of obvious from what they're doing. Yes, that's correct, Your Honor. And so what I'm trying to figure out is this is different than Munsingware, but what is the proper thing here to ensure that that incentive does not happen in this case or other cases? And so what I'm trying to figure out is should we reinstate the panel opinion because it would essentially do the same thing that a Munsingware vacature would do. That is exactly what this court should do, is vacate the vacature and just simply reinstate the panel opinion, Your Honor. And that would resolve any of our concerns to regard the fact that this was done in an attempt to defeat this court. It doesn't matter whether it happened here. What matters is if we allow this to happen, everybody will get the message that what you should do is seek en banc review, get the panel opinion vacated, maybe wait to see what en banc court you draw in the Ninth Circuit, or maybe not, and then moot out the case and you get rid of the panel opinion and you secure. So you basically get the benefit. It's like the mirror image of the benefit that you get when Munsingware is concerned about. It's not so much what they did in this case. It's the perverse incentive that it creates, it seems to be. Yes, I agree. If this court would make for extremely bad public policy and if this court were to not reinstate the three-judge panel, I'd pay for all the reasons. Mr. Beck, can I ask? Wasn't one of your claims the contention that this total ban included at the home so people could not even possess butterfly knives at the home? And with the change in the law, is that contemplated anymore, any kind of a ban at the home? No. As of right now, there's not a complete ban. So in a sense, then, you did achieve a type of win for your client in the sense that the legislature recalibrated and has narrowed the scope of its law. And now one of the main precepts of your claim, a total ban even including the home, is no longer in place. It's now just about concealed carry and about the use of the butterfly knife for criminal purposes. To me, that narrows the scope of what's going on with this law and whatever future challenge there might be. Why isn't that considered a win in your view because it protects certain rights that you are claiming should be protected? I absolutely believe that we have already prevailed in this case and that we should be assigned prevailing party status at the appropriate time. Well, that's not what I'm getting at. I guess what I'm getting at is why isn't this case moot insofar as if there's a future challenge now just on the concealed carry portion of this, why couldn't that be raised in a future claim, for example, or on remand to determine what the parameters of that new law, how that implicates the Second Amendment at that point? Well, because, again, the standard for determining mootness is any effectual relief. And here there is effectual relief that can be granted because there is a challenge to Hawaii's carry restrictions that are before the court. And there's no requirement that the law has to stay the exact same in order to fight off mootness. It just simply has to be anything, any relief that can be given. And that's the precedent. So you would want us to say that the current statute's ban on concealed carry violates the Second Amendment, and we would have to do that on this record where the parties didn't brief that or present the historical analogs to address that? The vast majority of the issues before this court are all... This court could order supplemental briefing, and that would alleviate any concerns that this court may have that... We shouldn't really be de facto finding, and you have made some factual arguments that butterfly knives cannot be carried openly because of the nature of the weapon. So how would we resolve that as a court of appeals en banc in the first instance? Well, because it wouldn't be for the first instance, Your Honor. This is evidence that I produced and was in the record in the trial court. The state disputed that evidence, and they waived any right to challenge that evidentiary record. Now, here on appeal, this court just simply has to assume those facts are in fact true because they haven't disputed them before. Just simply amending their law is an opportunity to reopen the record. And again... Why would they have disputed that below? It wasn't the issue. The issue was possession and open carry. Those were the two injuries your clients were claiming. Well, because... Well, for several reasons, one of which is the main mechanism to attempt to carry, say, a standard pocket knife openly is a clip. As part of our demonstration to show that a butterfly knife opens slower than a typical pocket knife, our expert showed that it does not have a... that they typically do not have clips, so it interferes with the mechanism. So the fact there's no clip, and hence you can't conceal... I'm sorry, open carry it, was part and parcel of the dispute over how the mechanism of a butter knife functions, and us showing that the state's position that these are somehow unusually dangerous knives compared to a standard pocket knife was faulty. Did you want to resume your last minute? Yes, Your Honor. Ten minutes didn't happen. Thank you.  Good morning. Thank you, Chief Judge Murguia, and may it please the Court, Reedy Swanson on behalf of the state appellees in this case. This case is now moved. This case was brought and litigated as a challenge to Hawaii's ban on possession and all public carry of butterfly knives. That's how this case was litigated from the very beginning, and the plaintiffs' insistence that they now wish to challenge a ban on concealed carry of butterfly knives is contrary to numerous representations... Well, does the complaint limit to concealed carry, or does the complaint just say carry? The complaint's prayer for relief just says carry, and I don't think we would be making this argument if we were just stuck with the complaint, although I will say that the complaint says, at paragraph 11, defendants retain the ability presumptively to regulate the manner of carrying arms. So from the very beginning, they were already saying the manner of carrying is subject to presumptive regulation. But that's not a concession... No, Your Honor. ...to this issue. And the main thing you're relying on is this exchange with the district judge on ER 61 and 62, where the district judge is trying to clarify the scope of the challenge. He says, are you challenging the entire statute? We would like to carry it, but we are making two separate challenges, both in the home and the carrying, Your Honor. And then the court responds, well, didn't the Ninth Circuit rule against you in Peruta on that, en banc? And then the response, in Peruta, the Ninth Circuit ruled that there's no freestanding right to concealed carry. And then the court goes on and says, but there's been no ruling, has there, as far as the right to carry openly, correct? And then the response is, the Ninth Circuit found that a three-judge panel, that you have a constitutional right to open carry outside the home, however the opinion was taken en banc. And then comes the summary comment from the court, you're challenging both the right to possess a butterfly knife in your home as well as the right to carry it openly in public. Isn't that, on that record, just a development of the arguments left after Peruta and not a forfeiture of a claim that if the law changes and the statute changes that I'm not saying anything else about carry? I think you're right, Your Honor, that if that were the only thing we were relying on, we would also have a harder argument, but it is not. After Bruin, the plaintiffs said in their supplemental brief to this court, concealed carry can be banned when the government allows for the open carry of arms, on page 20 of their supplemental brief. The next page, they say, a ban on possession is nothing like a restriction on concealed carry. But that's after the state had won on the whole thing. You won on the whole issue of possession, that the possession could be banned, in the district court. Yes, Your Honor, this was in their appellate brief. So they're attacking a broader position where a ban on total possession has been upheld, and they're saying, well, you can't have that extreme position, and the district court didn't reach the issue of whether or not carry would be separately a problem if possession could not be banned. Well, I don't think that's how I read those sentences in their brief. It's not that they're saying, you know, this isn't a case about concealed carry. They're making an affirmative representation to the court. Concealed carry can be banned when the government allows for the open carry of arms. That's an unqualified statement that they repeated. If I can interrupt, look at the brief. It actually says, these cases stand for the proposition that concealed carry is safe. I think they're talking about the cases at the time. I don't think they were necessarily asserting their position. I'm afraid I don't really see the distinction, Your Honor. They're describing what the law is based on. The case law here has been shifting quite dramatically over the past several years. So, you know, given the shifting legal landscape, to say that you forfeit the argument when, you know, one case was good at one point, no longer good, it seems a little hard to say that you forfeit the argument. Well, isn't this any... Oh, sorry, finish answering that question, and then I'll ask a follow-up. No, Your Honor. All I was going to say is, you know, we think the court can resolve this issue of mootness on the basis of waiver. But if the court doesn't agree, and the court thinks that there may be some surviving aspect of the challenge, then the Supreme Court gave a roadmap for how to handle that situation in the city of New York. And, you know, my friend on the other side said that the city of New York was completely different because the case gear was completely moot. That's not an accurate description of that case. What happened there was the challenge was to a flat ban on transporting weapons in the state of New York. The state amends that law, and the plaintiffs were making an argument much like the plaintiffs are here. They're saying, well, actually, you know, the new ban still puts a really heavy burden on what we want to do with our weapons. And there was a dispute, I think, between the parties about whether that claim had been preserved, about whether a retrospective damages claim had been preserved. The Supreme Court says, you know what? That's not how this case has been litigated in the lower courts. Let's send it back. Let's let the lower courts sort out, first of all, whether this issue has been preserved, and second, if so, to address it in the first instance. And so that... The court said that even with respect to claims that may not yet have been raised because of the reconfiguration of the case, correct? That's exactly right, yes. And so maybe this whole issue of whether or not they didn't technically preserve concealed carry isn't really relevant when the state has reconfigured the whole case, and the New York State case says, well, then it goes back, and you sort out all the problems that arise from that. Well, right. I mean, I think there were not the same issues of affirmative waiver in the city of New York that you have here. There was no evidence, for example, that the plaintiffs in that case had previously taken the position in their briefing that it would be okay if the state of New York had enacted the statute that it did. But that, I think, is really the only difference between the city of New York and this case. So can I ask... So if we went that direction, you've heard the questions I've been asking, and I'm looking at the New York case here. They vacated the Second Circuit decision, right? Yes, Your Honor. Who had won in the Second Circuit? I believe the state had, Your Honor. The state had won. Who won in the Ninth Circuit in your case? Well, temporarily, the plaintiffs did. And you secured a ministerial vacature of that by getting en banc granted, which is different than if you'd sought cert and the Supreme Court had granted cert, it wouldn't have vacated the decision. So is there any evidence in the New York case, the Supreme Court's New York case, that they would have vacated the Second Circuit decision if it had been similarly situated to this case to where the state had actually lost at the Second Circuit and then done something to moot the case? Yes, Your Honor. I think that evidence really comes from Munsingware itself. The Supreme Court says in Munsingware that the point of this practice is to clear the path for future litigation. No, Munsingware, I think it's exactly the opposite of that. Certainly, as Munsingware has developed in the Supreme Court and in our court, if the state loses and then moots a case, they don't get to knock out the lower court decision. That's the rule in Munsingware. In Munsingware, if you win and then there's something to moot and try to lock in your win, then, equitably, we're going to take away your win because that creates the potential for gamesmanship. But if the state loses and then does something to moot, which is what happened here, then normally we don't vacate the decision, right? A couple of things going on in there. I think, first of all, Your Honor, I don't think it's accurate to say that the state lost here. I think the timeline is really important. The full court did vacate. I don't think I agree that it's a ministerial vacater. Say that again. I don't agree that it's a ministerial vacater. You say the whole court vacated the state? Yes, the full court actually. No, we didn't, though. I know it says that in the order, but none of us ever voted to vacate that. There's no rule that says it vacated. That was just a ministerial vacature. It is in the circuit advisory notes. No, it's not. In fact, even today there's not a rule that says to vacate the decision. It may have been an ultra-virus action by this court. Your Honor, I agree with you that it is not in the rules. It is in the circuit advisory notes. No, it's not. The vacate decision, it's not. I mean, go ahead and submit something on the briefing on that, but it's not. If I could just ask, do you have the number handy? It's circuit advisory rule 35.2.3, I think. It says that the act of the court in granting rehearing en banc operates as a vacater of the original panel opinion. But even if that weren't true, the court did vacate the opinion, and that is a matter of course. I mean, I've never seen an en banc order from this court that didn't vacate. I mean, that's regular order in this court. Well, that's not true because we didn't do it for several years. I mean, we've gone back and forth on this issue. Sure, I'm sorry. So you've got to be careful about what you say. Yes, sir. This is actually important because we didn't do it for a long time. In fact, we used to not vacate at all. We did it. It was like when the Supreme Court grants cert. The decision would stay in place, and it would be an exceptional case we vacate. Then we gave permission to the en banc court panel, if they wanted to, to vacate the decision, and then we changed it to say that you shouldn't cite the case. But we actually don't have a rule. We recently amended our rules, the advisory, to say that at the end of this year, then there will be a decision. There will be an advisory rule, if you want to call it. It's not called a rule, but that will say that the decision gets vacated. But as of the time when your case went en banc, there was no rule saying it needed to be vacated. It just, as best I can tell, one of our staff attorneys just sent out an order that said that. None of us voted on it. So it just seems, you can see where I'm coming from, it seems weird that that ministerial vacature would somehow control in this case. Why wouldn't we, why should the fact that we just happened to ministerially vacate a decision, maybe without authority, control whether or not the three-judge panel decision will stay in place? Because it seems like if it hadn't been ministerially vacated, there'd be a really good argument for the fact that we would not, Monsignor, vacate that decision, because the state here mooted a case that it had lost, that it had lost. Well, under Bancorp, it's actually not a hardline rule that they could or wouldn't happen, even after the losing party.  It's an equitable decision that the court would make. And I also want to, explain to me equitably why, maybe that's maybe helpful. Explain to me, assuming that we have, and I don't know where everybody would be at this, but assuming that we have an equitable, explain to me why, equitably, we should leave the vacature in place, instead of vacating our vacature order. Well, it flows from, I think, the limits on Article III jurisdiction. I mean, the point of the mootness doctrine is basically the same as the standing doctrine. It's standing set in time. And the idea is that the court only addresses disputes when they arise in an adversarial context. And so to vacate the vacater at this point would operate as a judgment on the merits. It would operate as passing an advisory opinion. So I see your point on that. It seems kind of odd that we would retain the ability, if the case was completely moot, to vacate a decision, a three-judge panel decision, which we do. We have that in the Supreme Court. We'll do Munsingwear vacatures of lower court decisions when they become moot. But to say that somehow the fact that we had ministerially vacated meant that we couldn't retain the ability to make that Munsingwear equitable decision and put the decision back into place. Your Honor, I don't think that's actually at all odd because the vacater in the Munsingwear context is the Supreme Court. And this is a direct quote from Munsingwear. It says, it clears the path for future re-litigation. What happens is you basically take a law off the books so that it doesn't bind anybody. It's not preclusive. It's not precedential. You are essentially allowing for the issue to be litigated in the fullness of time if it becomes concrete again. And if you were to vacate the vacater here, you would be doing exactly the opposite. Right? You would be reinstating... Exactly, because six Munsingwear, we've recognized that that, that we only want to clear the books so that you can re-litigate if the state sort of has, doesn't have unclean hands by having mooted a case that it lost in. But where the state moots a case, intentionally moots a case that they lost in, then often we won't Munsingwear a vacature because we're like, well, you lost in that case. You did something to moot it. So you deserve to continue to have that decision against you on that issue. And so we won't get rid of that decision. So I get your point, but that rationale only works when it mooted through something that wasn't something that you caused. Well, I think the Supreme Court's opinion in Buckhannon actually says that the incentives should be sort of the opposite here. I mean, the Supreme Court's opinion in Buckhannon says that we want to promote legislatures to act to amend the law, to act through the democratic process to ensure that laws are being amended democratically. So I understand your argument there. So the question is, why would you not want to have this decision put back into place? Because the only reason I could think you wouldn't would be because the concern of bringing back the old law. Obviously, if we thought you were going to bring back the old law, then this case would not be moot, right, because of the voluntary cessation doctrine. So all this would be doing is ensuring that what we said in Glazing Health, if we brought the case back, it would just be ensuring that you don't go back, the legislature doesn't play games by trying to come back and repass the law because they wouldn't be able to because the panel opinion would keep them from doing it. In other words, it would just hold you to what the legislature has already done. Why would that prejudice you? Well, Your Honor, I think it would prejudice the state not just because it would prevent them from bringing back the law, because I think that there's no evidence in this record suggesting that the state has any intent of doing that. But it does create precedential law going forward for other cases. And in that sense, it would continue to bind not just the state of Hawaii, but it would bind all the other states in this circuit, and it would be persuasive. Wouldn't that same concern be true in the Munsingwera context, if just the ordinary, normal, not this weird context we're in now, but where you lost, and then you're appealing, say, to the Supreme Court, and then you do something to moot the case, you'd be like, well, we're probably not going to get a Munsingwera vacature, so this law is going to get locked in. I mean, you still have that concern in the ordinary Munsingwera vacature, this concern about we're going to get locked in precedent. Yes, Your Honor, that's certainly true, but I think here we really are in a situation that is closer to essentially if the case had been mooted before a panel opinion issued. I mean, it's important to remember that the state had no... neither side had any indication what this panel would do. Can I ask you to distinguish between the two issues in the prior panel opinion? One was the threshold issue of whether or not the knife at issue here is entitled to any Second Amendment protection at all, and the second is whether... if the answer to that question is yes, is a total ban consistent with the Second Amendment. The second issue seems moot, and I understand your arguments that it would be a judicial act to enter a judgment on that issue when it's dead, but the first issue doesn't seem to be moot because if we do a New York state rifle and send this back, there'd be no point in sending it back if you're right in your en banc petition that this weapon is not entitled to any level of protection and they didn't carry their burden, which you said is theirs, and the panel was wrong. Those issues don't seem to be moot, so why shouldn't we decide those issues before... because it might moot sending it back. I think there's sort of two responses to that, Your Honor. I think the first is sort of a prudential issue, which is that it's not at all clear that that issue actually will be important going forward, even if the court were to believe that this aspect of the concealed carry challenges survives. In that situation, I think the state would have a much sort of more clear, direct path to sustaining the law under the historical precedents. But when you have to... No, Your Honor. Whether it's an arm, that's the first step under Bruin. It's a question that is... that certainly would have to be answered if you were addressing the whole issue, but it's very common for courts to say, we're going to assume, we're going to assume arguendo a law is... or a weapon is protected, and then decide whether it's... Which is what the district court did here. That is exactly what the district court did here, and it could do that again on remand. So I think it's actually not the case that that issue has to be resolved going forward, and then, of course, we also have our argument, which we've already discussed, that that aspect of the case is not, in fact, going to be presented because we think that they've waived that issue. And I think... Is there any... So it's an issue of waiver, an issue of prudential judgment, but that issue isn't moot in this case in the current posture, is it? I think it is moot in an Article III sense if they have waived the challenge to their concealed carry ban, because that means that there is no relief that this court can grant these plaintiffs. And do you think that even if we remand under New York State Rifle, that they would be held to that... So on remand in the district court, it would be your position that they would be held to that waiver, notwithstanding the many developments, both in the Hawaii statute and in law from the Supreme Court that took place since they made the statement that you claimed to be the waiver? Yes, Your Honor, I think they would, and the reason for that is because the only real change that is potentially relevant to sort of whether they would press that claim or not is Bruin, and they repeatedly affirmed after Bruin that concealed carry can be banned as long as open carry is allowed. But that raises the question of whether open carry is allowed. Your friend on the other side argues that this statute is a de facto ban on any carry because you can't openly carry a butterfly knife. How do you respond to that? Well, first of all, waiver generally doesn't allow a party to sort of invent a new argument later when that position that they've previously taken is becoming invasive. I assume that we would let them do that because of all the changes in the law. If the court were to permit that, then I think that is exactly why the court should follow the roadmap laid out in the city of New York. I mean, you know, there were threshold questions in the city of New York that the Supreme Court might still have addressed, but it didn't do that. It vacated everything and sent it back to the district court to address everything in the first instance. So how do you respond to their argument that you could not carry a butterfly knife in a holster or a sheath or a clear bag or something along those lines? Essentially, the only thing you could do is perhaps carry it in your hand. So I think there's a textual argument and then a sort of physical, practical argument. On the textual argument, the statute, we agree entirely with the reading that the court was sort of suggesting earlier that whoever knowingly carries concealed on the person or in a bag or other container, that the modifier concealed applies to each of those. And it's true that the statute doesn't technically define concealed in this context, but that's only really a technicality. Section 134.1 of the Hawaii Revised Statutes contains a definition of concealed that applies. It says concealed means in relation to a firearm. You know, I recognize there are sort of expressio unias questions here, but I think that the definition that's about to follow is one that is really common sense and would, I think, pretty clearly be adopted in relation to other uses of concealed. I think this is probably a vestige of the fact that the statute used to only talk about concealed in the context of firearms. But it says concealed means in relation to a firearm that the firearm is entirely hidden from view of the public and not discernible by ordinary observation. So I think that that is the definition of concealed that would apply here. And so if you're carrying something in a sheath or a holster, then absolutely we think that that would be something that falls clearly within that definition, or I guess outside that definition in the sense that it is not concealed if it's visible to the public in a sheath or holster. Can I go back to the question about the difference between the arms and the actual historical analog? As to the historical analog, you've made a pretty compelling point that there's new factual developments that need to be determined. Is the same true for whether it's an arm? That would be the same analysis, the same arguments that were raised in the district court and before the panel. There's no difference under the new law versus the old law. If the court believes that Bruin, or Rahimi, I suppose, but really mostly Bruin, is relevant to that issue, then I think the answer is yes. The state should be given an opportunity to develop a new record on that because... On whether it's an arm? Rahimi would seem to go potentially to, you know, the role of whether criminals should be included or non-criminals should be excluded. But as to whether it's an arm, can you point to any new factual development that hasn't been presented to the district court or the panel that needs to be developed? I should clarify that I think the question that is relevant is if you think Bruin affects who has the burden on that issue, if you think that after Bruin, it's... So that's a legal question? Yes, that's a legal issue. Are there any... I'm going to just repeat my question one more time. Are there any factual... Is there any factual development that you think needs to be addressed to determine whether this is an arm? Yes, Your Honor. I think we would need to address whether it is commonly carried for the lawful purposes of self-defense. And I think that that is an issue where essentially in the district court... That presupposes a legal conclusion, of course, right? Because you're presupposing that that is a legal requirement of determining whether it's an arm. Well, of course, Your Honor. Yes, absolutely.  But we believe that... Yes, Judge Lee. Can I ask a question? So another way to ask is, does Hawaii's new statute, Act 21, affect the question of whether a butterfly knot is an arm under the Second Amendment? The amendment of the statute, I think, does not affect that issue. No, Your Honor. But the record was all developed in this case before Bruin. And so I think the relevant question for whether factual development should be granted... And this is part of why the state consistently asked for a remand after Bruin in this case, is if you think that Bruin makes clear, oh, actually the state bears the burden on this issue, it's pretty clear from the record that both parties in the district court were essentially relying on the idea that the other party had the burden of proof on that issue. Well, then why don't we decide that question and then let the district court figure it out? That would seem to be the more efficient way to handle it, wouldn't it? Well, again, I think, Your Honor, that brings us back to these questions of Article III mootness and whether that's actually a question that needs to be addressed in this case or not. But that seems like that's a different... If you're right that the whole case is moot, I agree with you. But if there's a difference between... If some portion of this is not moot and if this case is going to go forward, then why don't we decide this issue that you've already said is causing a lot of consternation in the district court? I think for all the reasons we've said, which is it's not altogether clear that that issue is going to be relevant going forward. But if the court does that and decides that yes, we are going to conclude that the plaintiffs have not waived all of their arguments even though they repeatedly, after Bruin, took the position that concealed carry can be banned. If the court does that and if the court also... But they haven't waived on the arms. Okay, never mind. Yes, Your Honor. I don't want to rehash it again. So let me... Can I ask this? Are you conceding that it is a bearable arm, that the butterfly knife is a bearable arm? I think we have never disputed that it falls within the literal definition of arm. I think the dispute that the parties have had has always been whether that is sufficient to trigger the presumptive protections of Bruin or whether there is an additional showing that a plaintiff needs to make to ensure that the weapon comes within the scope of those that are protected by the statute. And was that done previously in the court below? Was that argued? Was there facts presented? Because Bruin hadn't passed by then, had they? Bruin had not been adopted at this time. This was in the district court. And yes, the parties did brief that issue both ways. And as we discussed before, the district court ultimately assumed that they were protected under the Second Amendment and resolved it on the... And did the district court make a determination on who had the burden? No, Your Honor, it did not. And since Bruin, who has the burden? Isn't it the state? We don't agree that the state has the burden on that issue even after Bruin. But if the court disagrees and think that the state does have the burden after Bruin, then I think, for the reasons I was discussing with Judge Nelson, the right disposition, if the court gets all the way to that issue in this case, which we think is inappropriate. But if it happens, then their disposition is to resolve that question of who has the burden and then to allow the state to actually develop its burden on that issue factually. But why wouldn't the state have the burden? I mean, if we are in... A lot of the Second Amendment case law uses First Amendment analogies. And in the First Amendment context, we have categorical exceptions from the protection of free speech. Isn't the state's... Doesn't the state have the burden to show that a particular defendant's speech or that a statutory category regulating a category of speech is unprotected when it otherwise would be speech? You'd have to show that it's, you know, liable with defamation or obscenity. Doesn't the state have that burden? And why wouldn't that transpose into the Second Amendment context that if it's presumptively an arm, but you claim it's the type of arm that doesn't fall in, you have the burden? Yes, Your Honor. So I think that you're right that the state has the burden on those issues in the First Amendment context. But it's not the case that the plaintiff has no burden in the First Amendment context either. And what happens is, if there's an edge case where the question is not whether your speech or conduct is historically protected, but whether you have engaged in speech or expressive conduct at all, if you are addressing that question, the plaintiff has an initial burden to prove that they are engaged in something that is protected by the First Amendment. And that's the analogy that we think is more appropriate to this specific question. It does seem analogous to whether it's just a bearable arm. Am I speaking? Am I expressing? That would be your burden. And then you say, well, it's the bad type that falls into a categorical exception. You seem to be claiming a categorical exception for dangerous and unusual weapons, and this is one of them and gets nothing. It would seem the First Amendment analogy would say you have the burden on that kind of an argument. Well, let me walk you through why I think the best argument that I think we have that this is more like that first category. So Rahimi and Heller both emphasize that there are categories of conduct that literally involve a person bearing arms that are presumptively lawful. And presumptively usually means the plaintiff would have the burden of disproving lawfulness, essentially. So we know those categories exist. And so the question is, is this one of those categories or is this one on which the state bears the burden of proof? And Heller, I think, is the place where the court has spoken most clearly on this. It says on two different occasions, the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, and the Second Amendment right, whatever its nature, extends only to certain types of weapons. So we think that reading Heller sort of fully, what happens is you've got this initial burden of proving that the weapon you're trying to bear is protected, and then, and only then, does the burden shift to the state. Because in Heller, you know, right after Justice Scalia and the majority defined what an arm was, either an offensive weapon or a defense for armor, it immediately goes into a discussion of the original meaning of what an arm was, and it says that it did not include those military applications. And so there is some sense that in Heller and in several different places where an understanding of what the scope of the Second Amendment right is, what a bearable arm is, also involves an understanding about whether this was a weapon that was traditionally used for lawful purposes, such as self-defense. I take it that's the argument that you're making, that it is wrapped up in the Step 1 analysis as well. That's exactly right, and I think the way that Heller walks through the text of the Second Amendment makes that really clear. It walks through defining each word individually, yes, but then it says, putting all these together, here's how we read the text. And so I think that that's really important. It's not that we're looking at the word arm in isolation or the word bear in isolation. We're looking at the text, the entire operative clause, the same way that Heller does. So let me, before your time is up, I guess I want to see if you can summarize. If we were to vacate the decision below and remand the case with instructions to dismiss, in your view, would the dismissal be with prejudice or without prejudice? Without prejudice, Your Honor. It's an Article 3 dismissal. That's without prejudice. If the plaintiffs wanted to refile a lawsuit procedurally, they would be able to do so. I think, you know, we might have questions about whether their waiver in this law, these specific plaintiffs, whether their waiver in this lawsuit is finding future. And if we conclude that the case is not moot, I think your view is that we would remand the case for the district court to apply, or consistent with City of New York. Is that correct? That's right. You would just follow the road map in City of New York, vacate the case, send it back for the district court to address whether the plaintiffs have preserved this issue, and if so, to address the merits in the first instance. All right. I see I'm running out of time, but I just want to, I want to sort of really hammer why this disposition is important, which is because, you know, this effective ban theory, it's brand new. We've never had a chance to litigate the factual issue below, but it is highly contestable. I mean, if you go to the website that the plaintiffs have cited several times, Blade HQ, they've got a long list of sheaths designed specifically for butterfly knives, a lot of which are sold out right now. It's really popular. So for that reason, Your Honor, because this involves a new case with new facts and new issues, we ask this court to vacate and remand for the district court to address these issues in the first instance. Thank you. Thank you very much. I'll give you two minutes. Your minute and then one more minute. Your minute and one more minute. Thank you very much. So it's two minutes total, whoever's got the clock. Thank you. First, there was a question up here as to whether the state had ever conceded whether a butterfly knife was a bearable arm. They did so during the deposition of Robin Nakamini. And I don't have an ER site for that, but it's in there. Sorry, they conceded during a deposition? This was a 30 v. 6 witness? The expert, yes. Well, no, that's actually not a 30 v. 6 witness. Okay, so they had an expert who said that.  Yeah, all right. So we will clarify that in a supplemental letter. I just am not aware of the principle that a witness testimony is a concession by a party. But you could clarify that as well, but keep going. Yes, Your Honor. Here at this court, if this court decides to remand, at the bare minimum, what it needs to do is decide the threshold question of whether a butterfly knife is a protected arm. That would give clarity to the trial court that assumed that a butterfly knife was protected only to uphold it during the under-intermediate scrutiny. And it likely took that course of action because it just simply knew that it was going to uphold the law under intermediate scrutiny. And so it didn't need to engage in the heavy intellectual analysis of whether this was an arm. Now, the state's position that Bruin somehow abrogated Heller on the issue of who bears the initial burden just simply is not correct. Just on Friday, the United States Supreme Court signed Rahimi, and it reiterated Heller's holding that it's a presumptive protection to all bearable arms. And there's nothing in there that says that this presumption has anything to do with a military application or anything like that. I mean, that's something that perhaps the state could use to rebut that presumption. But ultimately, Heller is still binding. And just like the court in the Second Circus New York v. Rifle v. Cuomo case, it should find, it should decide this issue of what is an arm and expressly find, to clarify for all the trial courts, that there's a presumptive protection to all bearable arms. Thank you. Thank you, Your Honor. Thank you, Mr. Beck and Mr. Swanson. We appreciate the oral argument presentations here today. The case of Andrew Teeter and James Grell v. Anne E. Lopez and Darylene is now submitted, and we are adjourned. Thank you. The court stands adjourned until 1.30 this afternoon. Thank you. Thank you.
judges: MURGUIA, GOULD, NGUYEN, NELSON, MILLER, BADE, COLLINS, LEE, VANDYKE, SANCHEZ, ALBA